**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**J.C. PENNEY CORPORATION, INC.,**

                              **Plaintiff,**

              **v.**                                    **5:04-CV-1356**
                                                         **(FJS/DEP)**

**CAROUSEL CENTER COMPANY, L.P.;**
**PYRAMID COMPANY OF ONONDAGA;**
**PCM DEVELOPMENT COMPANY; and**
**CRYSTAL RUN COMPANY, L.P.,**

                              **Defendants**
_____

**APPEARANCES**                          **OF COUNSEL**

**HARTER, SECREST & EMERY, L.L.P.**      **EDWARD F. PREMO, ESQ.**
1600 Bausch & Lomb Place                 **KIMBERLY I. SHIMOMURA, ESQ.**
Rochester, New York 14604
Attorneys for Plaintiff

**J.C. PENNEY CORPORATION, INC.**        **CELESTE D. FLIPPEN, ESQ.**
6501 Legacy Drive
Plano, Texas 75024-3698
Attorneys for Plaintiff

**COSTELLO, COONEY & FEARON, P.L.L.C.**  **DENNIS P. HENNIGAN, ESQ.**
205 South Salina Street, 4th Floor       **JOHN R. LANGEY, ESQ.**
Syracuse, New York 13202                 **ROBERT J. SMITH, ESQ.**
Attorneys for Defendants

**DADD & NELSON, P.C.**                  **ERIC T. DADD, ESQ.**
11 Exchange Street
P.O. Box 238
Attica, New York 14011
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff filed this complaint on November 22, 2004, asserting a number of claims against Defendants concerning its lease obligations as a tenant in the Carousel Mall in Syracuse, New York, and the Galleria Mall in Wallkill, New York.  *See* Complaint at ¶¶ 1-2.  First, Plaintiff asserts a breach-of-contract claim against Defendant Carousel Center Company, L.P. ("Carousel"), alleging that Defendant Carousel miscalculated the amount of taxes that Plaintiff owed pursuant to their lease agreement.  *See id.* at ¶ 91.  Second, Plaintiff asserts an unjust-enrichment claim and a money-had-and-received claim against Defendant Carousel, alleging that, due to these miscalculations, it payed Defendant Carousel "more than $1 million in excess of the actual amount owed under the Lease for Increased Taxes."[1]  *See id.* at ¶¶ 96, 105.  Third, Plaintiff requests a judgment against Defendant Carousel declaring that Defendant Carousel improperly calculated Plaintiff's tax obligations under their lease agreement and setting off all future rent obligations by the amounts that it has overpaid.  *See id.* at ¶ 122.  Fourth, Plaintiff requests a judgment against Defendant Carousel declaring that Plaintiff's future tax payments be calculated in accordance with its interpretation of the lease provisions.  *See id.* at ¶ 132.

Plaintiff asserts the same claims against Defendant Crystal Run Company, L.P. ("Crystal Run").  *See id.* at ¶¶ 133-175.  Plaintiff seeks damages on all of its claims in excess of $75,000 plus costs, interest, and incidental and consequential damages.  Additionally, as stated, Plaintiff seeks declaratory judgment and set-off.

---

[1] Although Plaintiff alleges two separate causes of action, claims for unjust enrichment and money had and received are identical.  *See In re Estate of Witbeck*, 245 A.D.2d 848, 850 (3d Dep't 1997).

Currently before the Court is Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure in which they seek dismissal of all of Plaintiff's claims on statute-of-limitations grounds.  In the alternative, Defendants seek dismissal of Plaintiff's unjust-enrichment and money-had-and-received claims.  They also seek dismissal of one of the theories comprising Plaintiff's breach-of-contract claims: whether Defendants incorrectly calculated "Base Taxes" using payments in lieu of taxes ("PILOTs") instead of the taxes that would otherwise have been assessed during the "Base Years."[2]

In its complaint, Plaintiff alleges that Defendants miscalculated its tax charges in a number of ways.  In addition to asserting that Defendants Carousel and Crystal Run incorrectly used PILOTs to calculate "Base Taxes," Plaintiff asserts that Defendant Carousel used the wrong year to calculate the "Base Year," incorrectly used a combined land and improvements value to calculate "Taxes Applicable to the Demised Premises," and erroneously charged it for water and sewer taxes on multiple parcels of land for which it was not responsible.  *See id.* at ¶¶ 31-35, 52-56, 64-68.  Furthermore, Plaintiff asserts that Defendant Crystal Run incorrectly calculated its tax bills based on tax lots for which it was not responsible.  *See id.* at ¶¶ 84-85.  Since Defendants

_____

[2] The parties raised further arguments for the first time in letters dated after they had already filed all of their briefs pertaining to this motion.  Specifically, Plaintiff argues that, since Defendants concealed from it necessary information concerning the accrual of its claims, they are equitably estopped from asserting their statute-of-limitations defense.  *See* Plaintiff's Letter, dated May 20, 2005.  Defendants argue that the "voluntary payment" doctrine bars Plaintiff's claims.  *See* Defendants' Letter, dated November 22, 2006.  Since the parties did not raise these arguments in their motion, opposing, or reply papers, the Court will not consider them here.  *See* N.D.N.Y. L.R. 7.1(a)(4)(b) ("A sur-reply is not permitted"); *Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007) (refusing to consider "arguments first raised by letter several months after reply memoranda and all other motion papers have been filed"); *Pall Corp. v. Cuno Inc.*, No. 03-CV-0092, 2007 WL 2363019, *1 n.1 (E.D.N.Y. Aug. 14, 2007) ("Any arguments raised for the first time in . . . letters filed subsequent to the briefs will not be considered by this Court in rendering its decision.").

only seek dismissal of Plaintiff's breach-of-contract claims based on one of these theories, resolution of this motion may influence the determination of Plaintiff's other theories but it does not bear on them directly.

## II. BACKGROUND

On January 10, 1990, Plaintiff and Defendant Pyramid Company of Onondaga ("Pyramid"), developer of the Carousel Mall, entered into a twenty-five-year lease ("Carousel Lease"). *See* Complaint at Exhibit "A." Defendant Carousel assumed Defendant Pyramid's obligations under the Carousel Lease on or about October 17, 1995, and is the current landlord and operator of the Carousel Mall. *See id.* at ¶¶ 7, 14.

On May 15, 1990, Plaintiff and Defendant PCM Development Company ("PCM"), developer of the Galleria Mall, entered into a twenty-year[3] lease ("Galleria Lease"). *See id.* at Exhibit "B." Defendant Crystal Run assumed Defendant PCM's obligations under the Galleria Lease on or about August 22, 1996, and became the landlord and operator of the Galleria Mall. *See id.* at ¶ 17.

Defendants Pyramid and PCM sought and obtained revenue bond financing to develop the malls. Pursuant to an agreement with the Syracuse Industrial Development Agency, Defendant Pyramid agreed to pay the city PILOTs instead of the taxes that the city would otherwise have assessed on the property. *See id.* at ¶ 38. Defendant PCM entered into a similar

---

[3] The Carousel Lease and the Galleria Lease each contains six options to renew for an additional total of thirty years. *See* Complaint at ¶¶ 14 & 18. Accordingly, if Plaintiff exercised all of its options under the leases, it could extend them until November 2045 and April 2042, respectively. *See id.*

PILOT agreement with the Town of Wallkill Industrial Development Agency. *See id.* at ¶ 73.

In addition to providing for base rent, both the Carousel Lease and the Galleria Lease

("Leases") contain tax escalation clauses, which state that,

> [f]or each Lease Year after the Lease Year for which the Base
> Taxes shall have been established until the end of the term hereof
> Tenant shall pay Landlord in accordance with the provisions of
> paragraph F below, as additional rent, the amount by which the
> Taxes Applicable to the Demised Premises for such Lease Year
> exceed the Base Taxes . . . .

*See* Complaint at Exhibit "A" at 43, Exhibit "B" at 43.

Plaintiff claims that it made all payments as calculated by Defendants under the tax

escalation clauses without objection until April 16, 2004, at which time it demanded that

Defendant Crystal Run return its overpayments, and until June 11, 2004, at which time it

demanded that Defendant Carousel return its overpayments. *See id.* at ¶¶ 100, 143.


## III. DISCUSSION

**A.     Timeliness of Plaintiff's claims**

### 1. *Breach-of-contract and unjust-enrichment claims*

Defendants contend that, since Plaintiff did not file its complaint within six years of the

initial alleged breaches of contract, all of its claims are time-barred pursuant to the six-year

statute of limitations set forth in N.Y. C.P.L.R. § 213(2).  Plaintiff concedes that N.Y. C.P.L.R.

§ 213(2) bars its claims to the extent that they relate to rent overpayments made more than six

years before it filed its complaint on November 22, 2004.  Plaintiff counters, however, that its

claims relating to overpayments made on or after November 22, 1998, are not time-barred

because where a lease requires the payment of rent in installments the statute of limitations begins anew with each separate installment.

A federal court sitting in a diversity case must apply the substantive law of the forum state on outcome determinative issues. *See generally Erie R. R. Co. v. Tompkins*, 304 U.S. 64 (1938). "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) (citation omitted). Under this standard, the holding of "an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data* that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) (emphasis added) (citation omitted); *see also Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 n.5 (2d Cir. 2004) (citations omitted).

N.Y. C.P.L.R. § 213 prescribes a six-year period of limitations for breach-of-contract and unjust-enrichment claims. *See* N.Y. C.P.L.R. § 213(1) & (2); *Natimir Rest. Supply, Ltd. v. London 62 Co.*, 140 A.D.2d 261, 262 (1st Dep't 1988) (citation omitted). Additionally, it is well-established in New York that a cause of action for breach of contract or unjust enrichment arising from a series of installment payments accrues separately for each installment. *See, e.g., Phoenix Acquisition Corp. v. Campcore, Inc.*, 81 N.Y.2d 138, 141-42 (1993); *Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso*, 87 N.Y.2d 36, 45 (1995) (citations omitted); *Natimir*, 140 A.D.2d at 262. Several lower courts in New York have applied this rule to real property lease overcharge and nonpayment disputes. *See, e.g., Walton v. E. Analytical Labs, Inc.*, 246 A.D.2d

-6-

532, 534 (2d Dep't 1998); *Arrathoon v. E. N.Y. Sav. Bank*, 210 A.D.2d 366, 367 (2d Dep't

1994); *Woodlaurel, Inc. v. Wittman*, 199 A.D.2d 497, 498 (2d Dep't 1993); *Natimir*, 140 A.D.2d

at 262; *Yeshiva Univ. Dev. Found., Inc. v. Consultants & Designers, Inc.*, 60 A.D.2d 525, 527

(1st Dep't 1977); *A & I Realty Corp. v. Kent Dry Cleaners Inc.*, 61 Misc. 2d 887, 890 (N.Y. Dist.

Ct. 1969) (holding that, since the lease provided for monthly payments, "[i]t is obvious [ ] that it

was the intention of the parties that the landlord would have a separate cause of action for each

month's rent as it became due" (citation omitted)).  This rule conforms with other New York

cases holding that, for timeliness purposes, a continuous wrong will give rise to successive

causes of action.  *See, e.g., 509 Sixth Ave. Corp. v. N.Y. City Transit Auth.,* 15 N.Y.2d 48, 52

(1964) (holding that "an encroaching structure is a continuing trespass which gives rise to

successive causes of action").

　　　　Under this rule, Plaintiff's claims would only be time-barred to the extent that it seeks

relief for overpayments made before November 22, 1998, more than six years before it filed its

complaint.  However, the New York State Supreme Court, Appellate Division, First Department,

has carved a narrow exception to this rule where a tenant disputes its landlord's method for

computing lease escalation payments.  Where a plaintiff brings a claim alleging an overcharge of

lease escalation payments, he is barred from attacking the method for computing those payments

if (1) he does not file his complaint within six years after he obtained constructive knowledge of

the method of computation and (2) the method of computation at issue was continuously applied

during that time period.  *See Goldman Copeland Assocs., P.C. v. Goodstein Bros. & Co., Inc.*,

268 A.D.2d 370, 371 (1st Dep't 2000); *100 William Co. v. Aetna Ins. Co.*, 146 A.D.2d 170, 171

(1st Dep't 1990); *Barnan Assocs. LLC v. 196 Owners Corp.*, No. 102681/06, 2007 WL 1352805,

*4-*5 (N.Y. Sup. Ct. May 9, 2007); *Kramer Levin Naftalis & Frankel, LLP v. Metro. 919 3rd Ave., LLC*, 6 Misc. 3d 796, 800-01 (N.Y. Sup. Ct. 2004).  Defendants assert that Plaintiff had constructive knowledge of their computational methods when it received its first increased tax payment bill from Defendant Carousel in 1994 and from Defendant Crystal Run in 1997.  If Defendants are correct, under this exception all of Plaintiff's overcharge claims would be time-barred — even those seeking relief for overpayments made after November 22, 1998.

    The First Department's exception is susceptible to criticism on two grounds: (1) it has no apparent legal origin and (2) a complete bar to challenging the method for calculating continuing escalation payments may be excessively harsh considering the costs involved and the average length of a commercial lease.  However, as stated, a federal court must not disregard the decisions of an intermediate state appellate court unless it is "convinced by other persuasive data" that the New York Court of Appeals would hold otherwise.  Erroneous or unsupported legal reasoning, by itself, is not a ground for rejecting such precedent.  *See DiBella v. Hopkins*, 403 F.3d 102, 112-13 (2d Cir. 2005) (following cases decided by the intermediate state appellate courts on a question of state law despite finding them unpersuasive because, "[w]hether or not the Appellate Divisions have articulated a reasoned basis for [their conclusion], there can be no doubt that those courts believe that to be the appropriate standard").  Therefore, the Court is bound by the First Department's exception to the general rule.

    Having held this exception applicable, the next question is whether, examining the pleadings in the light most favorable to Plaintiff, Plaintiff had constructive knowledge of Defendants' methods for calculating the escalation payments prior to November 22, 1998.  Defendants bear the burden of making a *prima facie* showing that Plaintiff's claims are barred

-8-

under the statute of limitations. *See Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (citing *Hoosac Valley Farmers Exchange Inc. v. AG Assets, Inc.*, 168 A.D.2d 822, 563 N.Y.S.2d 954, 955 (3d Dep't 1990)).

At this stage of the litigation, Defendants have not met their burden to establish that Plaintiff knew or should have known about Defendants' methods before November 22, 1998. Defendants' statute-of-limitations defense relies upon facts that are beyond the scope of the pleadings and have yet to be developed. *Cf. In re Issuer Plaintiff Initial Public Offering Antitrust Litig.*, No. 00 Civ. 7804, 2004 WL 487222, *5 (S.D.N.Y. Mar. 12, 2004) (denying a motion to dismiss on statute of limitations grounds "because questions of fact exist[ed] as to whether Plaintiffs should have discovered the facts alleged in their complaint prior to the expiration of the statute of limitations period"). Defendants assert that "all of the information on which [Plaintiff] now bases its claims was available to [it] from the time [D]efendants first billed it for Increased Taxes." *See* Defendants' Memorandum of Law, dated May 17, 2005, at 6. However, the pleadings are insufficient to establish what information those bills contained or what other information might have been available to Plaintiff. Moreover, Plaintiff alleges several facts in its complaint that, if accepted as true, suggest that Defendants withheld information or provided it with misleading information about their calculations.[4] *See* Complaint at ¶¶ 22, 33, 46-48, 50-51, 64-65.

---

[4] Specifically, Plaintiff alleges that Defendants "deceptively" prepared their increased tax invoices and that Defendant Carousel misrepresented the date on which the tax assessment was completed for purposes of calculating the base taxes. *See* Complaint at ¶¶ 22, 33. Additionally, Plaintiff alleges that Defendant Carousel did not provide it with the relevant city and county tax bills until July 9, 2003, *see id.* at ¶¶ 46-47, 50-51, and "deliberately withheld water and sewer tax information . . . until the thirteenth Lease Year, when [Plaintiff] questioned the water and sewer charges . . . ," *see id.* at ¶¶ 65-65.

Defendants argue that, even if they did not provide Plaintiff with accurate information about their methods, Plaintiff could have requested this information from them at any time. *See* Defendants' Memorandum of Law, dated May 17, 2005, at 5. Additionally, they argue that Plaintiff could have obtained information about its water and sewer tax obligations from the public record. *See id.*

Under some circumstances, courts may impute constructive knowledge to a party who should have exercised reasonable diligence in inquiring about the propriety of another party's conduct. *See, e.g., McIntyre v. United States*, 367 F.3d 38, 60 (1st Cir. 2004) (finding that the plaintiffs had constructive knowledge of the accrual of a Federal Tort Claims Act cause of action where local and national press coverage about their father's murder provoked a duty to inquire further); *Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) (holding that, for purposes of triggering the statute of limitations in a securities fraud case, "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry" (citation omitted)); Restatement (First) of Trusts § 297 cmt. a (1935) ("A third person has notice of a breach of trust not only when he knows of the breach, but also when he should know of it; that is when he knows facts which under the circumstances would lead a reasonably intelligent and diligent person to inquire . . . ."). However, Defendants' argument again improperly assumes facts outside of the pleadings, i.e., whether a reasonable person under the circumstances would have suspected that Defendants' calculations differed from Plaintiff's understanding of the lease terms and whether Plaintiff actually made inquiries. Accordingly, to the extent that Plaintiff challenges the rent overcharges made on or after November 22, 1998, the

-10-

Court denies Defendants' motion for judgment on timeliness grounds.  To the extent that Plaintiff challenges the rent overcharges made before November 22, 1998, the Court grants Defendants' motion for summary judgment on timeliness grounds.


### 2. Declaratory-judgment claims

Defendants also contend that Plaintiff's declaratory-judgment claims are time-barred. Plaintiff, however, asserts that "[t]he statute of limitations governing a declaratory judgment cause of action does not accrue until an actual controversy, which is the subject of the action, is known to exist."  Plaintiff's Memorandum of Law at 22 (citing *Hebrew Home for Orphans and Aged of Hudson County v. Freund*, 208 Misc. 658, 662, 144 N.Y.S.2d 608, 611 (Sup. Ct. Bronx County, 1955)).  Plaintiff argues that, since Defendants first refused to refund Plaintiff's alleged overpayments in 2004, no justiciable controversy arose until 2004.  *See id.* at 23-24.

"In order to determine the statute of limitations applicable to a particular declaratory judgment action, the court must 'examine the substance of that action to identify the relationship out of which the claim arises and the [nature of the relief requested].'"  *Save the Pine Bush, Inc. v. City of Albany,* 70 N.Y.2d 193, 202 (1987) (quoting *Solnick v. Whalen,* 49 N.Y.2d 224, 229 [(1980)]).  "If the court determines that the underlying dispute can be or could have been resolved through a form of action or proceeding for which a specific limitation period is statutorily provided, that limitation period governs the declaratory judgment action."  *Id.* (citations omitted).  If, however, the court does not find any specific period of limitations applicable, the court must apply the six-year catch-all period set forth in N.Y. C.P.L.R. § 213(1). *See Solnick*, 49 N.Y.2d at 230; *Am. Indep. Paper Mills Supply Co., Inc. v. County of Westchester*,

16 A.D.3d 443, 444 (2d Dep't 2005).  In any event, Plaintiff's declaratory-judgment claims are subject to a six-year period of limitations, which began to run on the dates that Defendants first committed their alleged breaches.[5]

Furthermore, "[a] cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract."  *Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 54 (1st Dep't 1988) (citing *James v. Alderton Dock Yards,* [*Ltd.*,] 256 N.Y. 298, 305, 176 N.E. 401, *rearg. denied* 256, N.Y. 681, 177 N.E. 191[(1931)])) (other citation omitted).  Since Plaintiff's breach-of-contract claims provide it with an adequate remedy in this case, not only are Plaintiff's declaratory-judgment claims subject to the same period of limitations as its breach-of-contract

---

[5] Plaintiff does not contest that its declaratory-judgment claims are subject to a six-year period of limitations.  *See* Plaintiff's Memorandum of Law at 25 n.7.  Rather, it challenges the dates on which the statute of limitations for these claims began to run.  Specifically, Plaintiff contends that the statute of limitations did not begin to run until 2004, when Defendants refused to accept its escalation payment calculations and refund its overpayments because, until that date, there was no justiciable controversy.  *See id.* at 23-24.  The cases that Plaintiff cites for this proposition, *see Boyce v. Rinehart*, 263 A.D.2d 377, 377-78 (1st Dep't 1999); *Employers' Fire Ins. Co. v. Klemons*, 229 A.D.2d 513, 514 (2d Dep't 1996); *Charney v. N.J. Trading Corp.*, 172 A.D.2d 390, 390-91 (1st Dep't 1991); *Hebrew Home*, 208 Misc. at 662; *Pollack v. Josephy*, 162 Misc. 238, 240 (N.Y. Sup. Ct. 1937), fall wide of the mark.

These cases all concerned property ownership disputes where the plaintiff did not yet claim that the defendant committed a breach of contract resulting in damages.  The courts in these cases simply held that, where no injury has yet occurred, there is no justiciable controversy until one party makes a direct repudiation of another party's legal rights.  However, the existence of a justiciable controversy is not an issue in this case.  It is well-established that a claim for breach of contract accrues when the alleged breach occurs.  *See Guild v. Hopkins*, 271 A.D. 234, 244 (1st Dep't 1946).  Thus, there is no question that an alleged breach of contract presents a question ripe for judicial determination.  Since the justiciable controversy began when Defendants first allegedly breached the Leases, Plaintiff's declaratory-judgment claims also accrued on those dates.  Otherwise, a plaintiff would be able to save an untimely breach-of-contract claim simply by couching his action as one for declaratory judgment where the defendant delayed in formally repudiating the plaintiff's contractual rights.

claims, but they are also "unnecessary and inappropriate."  *See Watson v. Sony Music Entm't,*

*Inc.*, 282 A.D.2d 222, 223 (1st Dep't 2001) (dismissing the plaintiff's declaratory-judgment

claim concerning the method used to calculate royalties under his recording contract because "the

useful purpose of settling the controversy over the correct methodology . . . [was] no less

adequately accomplished by plaintiff's cause of action for breach of contract"); *Apple Records,*

*Inc.*, 137 A.D.2d at 52-53 (dismissing the plaintiffs' declaratory-judgment claim concerning the

calculation of future escalation payments under a contractual provision setting the prices for the

manufacture and distribution of the Beatles' albums because their breach-of-contract claims

"provide[d] [them] with a full and adequate alternative remedy . . ." and would "still sufficiently

guide the parties on their future performance of the contracts, thereby obviating any need for

declaratory judgments").

   The Court's resolution of Plaintiff's breach-of-contract claims regarding the methods

used to calculate Plaintiff's past escalation payments will provide binding authority for the

correct methods going forward.  Accordingly, the Court dismisses Plaintiff's declaratory-

judgment claims because they are "unnecessary and inappropriate" in light of the fact that

Plaintiff has an adequate alternative remedy in its breach-of-contract claims.


**B.**  **Plaintiff's breach-of-contract theory**

   As noted, Defendants do not seek dismissal of Plaintiff's breach-of-contract claims in

their entirety.  They address only Plaintiff's theory that Defendants breached the Leases when

they calculated "Base Taxes" according to the PILOTs made in the "Base Years."

Under New York law, "agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 569 (2002) (citation omitted). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract giving practical interpretation to the language employed and the parties' reasonable expectations." *Costello v. Casale,* 281 A.D.2d 581, 583 (2d Dep't 2001) (citation omitted). In such a case, interpretation of the contract is a question of law, not one of fact. *See Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 73 (2d Cir.1989) (citations omitted); *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 460 (1957). Since the term "Base Taxes" is unambiguous in this case, this issue is determinable as a matter of law.

As defined in the Leases,

> "Base Taxes" shall mean the *Taxes Applicable to the Demised Premises* for the third Lease Year after the improvements on the Demised Land shall have been fully assessed as fully completed improvements and taxes paid on the basis of such assessment. Notwithstanding the provisions of the preceding sentence, if, pursuant to the provisions of any law or ordinance or negotiated agreement, there shall be a *total or partial abatement or reduction in the Taxes Applicable to the Demised Premises* in any year which is to be used in determining the amount of the Base Taxes, then solely for the purposes of determining the amount of Base Taxes, the amount of the Taxes Applicable to the Demised Premises for such year shall be adjusted so as to equal the amount which would have been paid for such year if there had been no such abatement or reduction.

*See* Complaint at Exhibit "A" at 42, Exhibit "B" at 42 (emphasis added).

As the highlighted language makes clear, the definition of "Base Taxes" depends on whether there has been an "abatement or reduction" in the "Taxes Applicable to the Demised Premises" in the third "Lease Year." *See id.* As such, it is necessary to define "Taxes Applicable

-14-

to the Demised Premises." The Leases provide that

> "Taxes Applicable to the Demised Premises" shall mean:
>
>> (1) *Taxes* assessed or levied on the land and all improvements comprising the Demised Premises if said premises are separately assessed, or
>>
>> (2) if the Demised Premises are not separately assessed, the sum of the following: (i) *Taxes* assessed or levied on the land constituting the Larger Parcel multiplied by a fraction, the numerator of which shall be the number of square feet of land within the Demised Land and the denominator of which shall be the number of square feet of land within the Larger Parcel (including the Demised Land), plus (ii) *Taxes* assessed or levied upon all improvements on the Larger Parcel which are fully completed and fully assessed as fully completed improvements for the entire fiscal tax year for which such *Taxes* are imposed multiplied by a fraction, the numerator of which shall be the number of square feet of Floor Area within all improvements on the Demised Land and the denominator of which shall be the aggregate number of square feet of Floor Area within all improvements on the Larger Parcel (including those on the Demised Land) which are fully completed and fully assessed as fully completed improvements for the entire fiscal tax year for which *Taxes* are imposed.

*See* Complaint at Exhibit "A" at 41-42, Exhibit "B" at 42 (emphasis added).

Whether or not the "Demised Premises" are separately assessed, the meaning of "Taxes Applicable to the Demised Premises" in turn depends on the meaning of "Taxes." The Leases provide the following definition of "Taxes," in pertinent part:

> "Taxes" shall mean all real estate taxes and assessments for public improvements or benefits which shall be assessed or levied against or upon the Demised Premises or property of which the Demised Premises are a part for any fiscal tax year *or in the event Landlord secures revenue bond financing for the construction of the Shopping Center and the terms of such financing eliminates the payment of real estate taxes and substitutes an alternate payment,*

-15-

> *"Taxes" shall mean such alternate payment . . . .*

*See* Complaint at Exhibit "A" at 41, Exhibit "B" at 41 (emphasis added).

Defendants Pyramid and PCM purchased industrial revenue bonds to finance the construction of the Carousel Mall and the Galleria Mall.  They both entered into financing agreements with municipal agencies, under which the parties agreed to eliminate real estate taxes and substitute PILOTs.  Thus, under the Leases, "Taxes" means PILOTs.  "Taxes Applicable to the Demised Premises" means PILOTs assessed for the "Demised Premises" or a fraction of the PILOTs assessed for the "Larger Parcel," depending on whether the "Demised Premises" are separately assessed.  In either case, the "Base Taxes" are equal to the PILOTs applicable to the "Demised Premises" in the third "Lease Year."  Since none of the parties contends that there was an abatement or reduction of the PILOTs in the third "Lease Year," Defendants properly used the PILOTs applicable to the "Demised Premises" to calculate "Base Taxes."

Plaintiff argues that the term "abatement or reduction" should be read to modify real estate taxes, not PILOTs.  Under this reading, assuming the PILOTs are smaller in amount than the tax assessments, a PILOT is an "abatement or reduction" in taxes.  This construction ignores the plain language of the lease provisions.  "Abatement or reduction" clearly modifies "Taxes Applicable to the Demised Premises," which in this case means "PILOTs applicable to the 'Demised Premises.'"  Where a term is expressly defined in the contract, its meaning is not "up for debate."  *Lee v. BSB Greenwich Mortgage Ltd. P'ship*, 267 F.3d 172, 180 (2d Cir. 2001); *see also Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978) ("[T]here is no ambiguity since the words in the paragraphs of the policy under

examination have a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion.") (citations omitted).  Accordingly, the Court finds that Defendants properly calculated "Base Taxes" using the PILOTs rather than the otherwise-applicable tax assessments and grants Defendants' motion for judgment on the pleadings on this ground.[6]

## C.   Plaintiff's unjust-enrichment and money-had-and-received claims

Unjust enrichment is based on implied or quasi-contract.  *See Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982).  The plaintiff is required to "establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quotation omitted).  A restitution remedy is available whether the defendant engaged in wrongdoing or merely obtained the plaintiff's money by mistake.  *See Citipostal, Inc. v. Unistar Leasing*, 283 A.D.2d 916, 919 (4th Dep't 2001).

Since this form of relief is quasi-contractual, "it applies in situations where no legal contract exists." *Indyk*, 694 F.2d at 57.  Therefore, the existence of an enforceable contract generally precludes recovery on this theory.  *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 CIV 1537, 2003 WL 23018888, *17 (S.D.N.Y. Dec. 22, 2003).

---

[6] Since the contractual terms are unambiguous, Plaintiff's argument that the current calculation of "Base Taxes" provides Defendants a windfall is immaterial.  Moreover, Plaintiff is incorrect that use of the PILOTs to calculate "Base Taxes" confers a windfall.  Since the PILOTs represent the amount of "Taxes" that Defendants actually pay each year, calculating "Base Taxes" according to these payments most accurately offsets the increase in costs to Defendants for each lease year.  Therefore, Defendants are not receiving an unexpected profit.  They are merely transferring the increased tax burden to Plaintiff as intended under the Leases.

Since the parties agree that the Leases are enforceable, the Court grants Defendants' motion

for judgment on the pleadings on this ground.


## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and

the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for judgment on the pleadings on the ground that

Plaintiff's claims are time-barred is **GRANTED** with respect to Plaintiff's claims

concerning overcharges made before November 22, 1998, and **DENIED** with respect to

Plaintiff's claims concerning overcharges made on or after November 22, 1998; and the

Court further

**ORDERS** that Defendants' motion for judgment on the pleadings is **GRANTED**

with respect to Plaintiff's breach-of-contract theory that Defendants improperly calculated

"Base Taxes" using the PILOTs rather than the otherwise-applicable tax assessments;[7] and

the Court further

**ORDERS** that Defendants' motion for judgment on the pleadings is **GRANTED**

with respect to Plaintiff's unjust-enrichment and money-had-and-received claims; and the

Court further

---

[7] The remainder of Plaintiff's breach-of-contract theories were not at issue in this motion and, therefore, survive this decision. Those theories are as follows: (1) Defendant Carousel used the wrong year to calculate the "Base Year," (2) Defendant Carousel incorrectly used a combined land and improvements value to calculate "Taxes Applicable to the Demised Premises," (3) Defendant Carousel erroneously charged Plaintiff for water and sewer taxes on multiple parcels of land for which it was not responsible, and (4) Defendant Crystal Run incorrectly calculated Plaintiff's tax bills based on tax lots for which it was not responsible.

**ORDERS** that Defendants' motion for judgment on the pleadings is **GRANTED** with respect to Plaintiff's declaratory-judgment claims; and the Court further

**ORDERS** that Plaintiff's counsel is to initiate a telephone conference with the Court and Defendants' counsel, using a professional conferencing service, on **July 24, 2008,** at **9:30 a.m.**, to discuss the status of this action.

**IT IS SO ORDERED.**

Dated: July 8, 2008
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge